DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Huron County Court of Common Pleas that found appellant guilty of one count of theft by deception from an elderly person as prohibited by R.C.2913.02(A)(3) and (B)(3), a felony of the fourth degree, and sentenced him to a term of imprisonment. For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "Assignment of Error Number One
 {¶ 4} "The trial court erred by not granting the defendant's motion to dismiss at the conclusion of the state's case pursuant to Criminal Rule 29."
 {¶ 5} "Assignment of Error Number Two
 {¶ 6} "The trial court erred by refusing to allow the defense to present evidence of the defendant's good character and reputation for truthfulness.
 {¶ 7} "Assignment of Error Number Three
 {¶ 8} "The trial court erred by not granting proper pre-trial jail time credit in this case."
 {¶ 9} On December 30, 2002, appellant was released from prison after serving an eleven-year sentence for theft and aggravated robbery with a firearm specification. While in prison, appellant became acquainted with fellow inmate Dennis Ellis, who remained incarcerated after appellant was released. Testimony of the victims, Dennis' parents Jackson and Lilly Ellis, was that on January 30 and 31, 2003, appellant contacted them and said that if they gave him $3,500 he would hire an attorney to represent their son. Appellant allegedly told them that he would see to it that their son was released from prison within 30 to 60 days. On January 31, 2003, the Ellises sent appellant a $3,500 money order. The Ellises grew concerned, however, when they did not hear from appellant after several weeks. At the end of February, they contacted the law firm appellant had mentioned hiring, and were told that the firm had no record of any contact with appellant or Dennis Ellis. On February 27, 2003, after having learned that on February 4 appellant had cashed the money order they had sent him, the Ellises went to the Huron County Sheriff's Office and explained their situation. The Sheriff's Office immediately contacted appellant's parole officer, Ken Kaufman, and asked him to question appellant. Kaufman located appellant that same day and arrested him for a possible violation of his parole.
 {¶ 10} On April 28, 2003, a complaint was filed charging appellant with theft and a warrant was issued. Appellant was arrested that day and indicted on May 19, 2003. After trial to a jury, appellant was convicted of one count of theft by deception from an elderly person and sentenced to 17 months in prison. It is from that judgment that appellant appeals.
 {¶ 11} In his first assignment of error, appellant asserts that the trial court erred by not granting his motion to dismiss made pursuant to Crim.R. 29. Appellant argues that he told the Ellises on January 31, 2003 that the attorney he hired would have their son released in 30 to 60 days, and that he was arrested for the theft offense only 27 days later, which prevented him from having the full 30 to 60 days to perform his side of the agreement.
 {¶ 12} Crim.R. 29(A), Motion for Acquittal, provides, in pertinent part: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"
 {¶ 13} The Supreme Court of Ohio interpreted Crim.R. 29(A) inState v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, as follows: "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." The reviewing court shall consider the evidence in a light most favorable to the appellee. Jackson v.Virginia (1979), 443 U.S. 307.
 {¶ 14} At the trial on this matter, the state presented the testimony of Martha Coyner, a paralegal with the law firm of Flynn Clark in Rittman, Ohio. Coyner testified that upon the request of the Huron County Prosecutor's Office she checked the firm's records as far back as the 1970's and could find no indication of a professional association with appellant, Dennis Ellis, or Ellis's parents. Coyner stated that if an individual came to the office and paid a sum of money as partial or full payment for legal services there would be a record of the transaction, and said that she found no record of appellant having paid either of the attorneys a sum of money.
 {¶ 15} Lilly Ellis testified as to the contact she and her husband had with appellant, which was initiated on January 30, 2003, when appellant called them. Mrs. Ellis stated that appellant asked them for $3,500 so that he could hire a lawyer to get their son out of prison. After she asked appellant several times for the name of the lawyer, appellant volunteered the firm name Flynn Clark. Mrs. Ellis further testified that when she spoke to appellant, her husband, Jack, was on an extension. She testified that appellant told them he had already paid the lawyer $2,500 of his own money on their son's behalf. Mrs. Ellis stated that appellant told them he could have their son released within 30 days. While on the phone with appellant, the Ellises agreed to send him $3,500 but told him they did not know how soon they could get to the bank because Mr. Ellis was recovering from surgery. She further testified that they were able to purchase a money order on January 31, 2003. Mrs. Ellis identified the money order on which she had written "Dennis Ellis attorney fees to be released in 30 to 60 days." Appellant called the Ellises on January 31 to see if they had changed their minds and they mailed the money order to him that day. Mrs. Ellis testified that despite having asked appellant to call them when he received the money, they did not hear from him again after January 31. She further explained that after nearly a month they became concerned and contacted the law firm appellant had mentioned and learned that neither appellant nor their son had contacted the firm. The Ellises then took a copy of the money order to the Sheriff's Office. She stated that she never gave appellant permission to use the $3,500 for any purpose other than hiring an attorney for her son, that she was never contacted by an attorney on her son's behalf, and that none of the $3,500 was ever paid back to them.
 {¶ 16} Kenneth Kaufman, appellant's parole officer, testified that after receiving a call from the Huron County Sheriff's Office on February 27, 2003, advising him that appellant might be committing a theft offense, he went to appellant's home to interview him. Upon questioning, appellant told Kaufman that he was attempting to contact an attorney on behalf of Ellis. Kaufman further testified that as a condition of his parole, appellant was not to have any contact with other felons. Kaufman placed appellant under arrest at that time. At the time of his arrest, appellant was unemployed and was not receiving any government benefits but had $800 in cash on his person.
 {¶ 17} Jackson Ellis, Dennis Ellis's father, testified as to the contact he and his wife had with appellant in January 2003. His testimony essentially confirmed that of Lilly Ellis as to their two telephone conversations with appellant and the $3,500 they sent him to hire an attorney for their son. He confirmed that he and his wife never gave appellant permission to use the money for anything other than hiring an attorney for their son. Mr. Ellis further testified that appellant had tried to get another $2,500 from them for funds he said he had already advanced for their son's legal assistance.
 {¶ 18} Dennis Ellis testified that before appellant was released from prison appellant told him that he could find an attorney to help him out. Dennis identified several letters written to him by appellant in which appellant said that he had already given a lawyer $2,500 and needed $3,500 more to finish the job for Dennis. He further testified that appellant told him he had hired a law firm by the name of Flynn and Clark but that he was never contacted by an attorney.
 {¶ 19} After the state rested, appellant testified on his own behalf. He stated that the money from the Ellises was partly for legal work he was doing himself and partly for the attorneys he planned to hire. He testified that in the 27 days between when he received the money and when he was arrested, he performed legal work for Ellis, although no papers were filed. Appellant further testified that he destroyed all of the papers relating to work he had done for Dennis Ellis after his parole officer told him he could not communicate with inmates.
 {¶ 20} Appellant asked the trial court to dismiss the case pursuant to Crim.R. 29 at the close of the state's case and renewed his motion after the defense rested. In support of his argument that the trial court erred by denying his motions to dismiss, appellant focuses on the fact that he was arrested 27 days after the Ellises sent him the $3,500 and asserts that, based on his telling them that it would take 30 to 60 days from that point to get their son released from prison, there was insufficient evidence for a jury to conclude that he had committed theft by deception.
 {¶ 21} Upon thorough review of the evidence presented at trial, this court finds that at either time appellant moved for acquittal there was sufficient evidence for the jury to reach different conclusions as to whether appellant had committed theft by deception. At the conclusion of the state's case, there had been extensive testimony in support of the charge against appellant as well as evidence in the form of the letters appellant wrote to Dennis asking him to get the money from his parents so he could hire an attorney. The jury heard testimony from both Jackson and Lilly Ellis that appellant told them the money would be used to hire an attorney for their son and that Dennis would be released within 60 days, that they never heard from appellant after they sent the money, and that after nearly one month no attorney had been hired. Appellant renewed his motion for acquittal after the close of all of the evidence, after the jury had heard his own testimony that it was all a misunderstanding, that he had never made any promises to the Ellises, and that the money was owed to him by Dennis for legal work appellant had already done on Dennis' behalf. Again, the trial court denied the motion, finding that when the evidence was viewed in a light most favorable to the state, reasonable minds could come to different conclusions with respect to whether all of the elements of the crime had been proven.
 {¶ 22} Upon our review of the record, we find that sufficient evidence was presented which tended to satisfy the elements of R.C. 2913.02(A)(3) and (B)(3), and that reasonable minds could have reached different conclusions as to whether the state proved beyond a reasonable doubt that appellant committed theft by deception from an elderly person. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 23} In his second assignment of error, appellant asserts that the trial court erred by barring the defense from presenting evidence of his good character and reputation for truthfulness. Appellant argues that he should have been permitted to present the testimony of two fellow inmates that he was a truthful person of good character when it came to doing legal work for them in prison. Appellant argues that in response to the state's attacks on his credibility as a person and as a "jailhouse lawyer," he should have been allowed to call character witnesses to testify as to past evidence of honesty and truthfulness because such evidence was relevant to his state of mind and claimed intention to use the Ellises' money to perform legal work for their son outside of prison.
 {¶ 24} When appellant attempted to call two witnesses to testify as to his reputation in prison, the state objected on the grounds that what appellant did in prison was not relevant to his conduct after he was released. After hearing arguments from both parties, the trial court concluded that testimony as to appellant's reputation in prison was not probative on the issue of whether there was an agreement between appellant and the Ellises, or on the issue of whether he was likely to commit theft by deception outside of prison. The trial court noted that circumstances in prison and outside of prison are entirely different and that the consequences of not keeping your word in prison could be much more unpleasant than the consequences one would face for not keeping your word "on the outside." The trial court accordingly found the proffered evidence not probative on any issue that was relevant to the action and ruled that it was inadmissible.
 {¶ 25} Evid.R. 401 defines relevant evidence as that which has "* * * any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, "* * * the question of whether evidence is relevant is ordinarily not one of law but rather one which the trial court can resolve based on common experience and logic." State v. Lyles (1989),42 Ohio St.3d 98, 99. Moreover, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 26} This court has reviewed the transcript of the discussion between counsel and the trial court as to the admissibility of testimony concerning appellant's reputation for truthfulness in prison. The trial court's decision, as summarized above, clearly was made after careful consideration of the arguments from both parties and we therefore find that it was not unreasonable, arbitrary or unconscionable. Accordingly, we find that the trial court did not err by ruling the evidence inadmissible, and appellant's second assignment is not well-taken.
 {¶ 27} In his third assignment of error, appellant asserts that the trial court failed to give him the proper credit for jail time served before his conviction. The record reflects that the Huron County Sheriff's Department certified that, as of December 18, 2003, appellant had served 18 days in confinement in the months following his arrest on the complaint filed in this case. This included ten days served from April 28 until May 7, 2003; five days from October 10 until October 14, 2003; and three days from December 16 until December 18, 2003.
 {¶ 28} On February 9, 2004, appellant filed a pro se motion for jail time credit in which he argued that he was entitled to credit for time served after his February 27, 2003 arrest for violating post release control. By judgment entry filed March 11, 2004, the trial court denied appellant's motion, giving him credit for 18 days as previously calculated. On appeal, appellant asserts that he should have received credit for the days he was incarcerated from February 27, 2003 until May 7, 2003, when he posted bond, and then for time served from October 10, 2003, when his bond was revoked, until December 18, 2003, for a total of 138 days.
 {¶ 29} In its judgment entry denying the motion, the trial court determined that appellant was not entitled to jail-time credit for the days he was incarcerated after February 27, 2003, because he was arrested and jailed for a post-release control violation. The trial court found that the violation of post-release control and any subsequent sanction is part of the punishment for the original criminal conduct, not part of the sentence for the new act. We agree.
 {¶ 30} It is not disputed that appellant was arrested on February 27, 2003 for a potential parole violation arising from conduct relating to the charges brought in this matter. It was not until April 28, 2003, however, that appellant was arrested on the complaint filed in the Norwalk Municipal Court alleging that he had committed theft by deception. As the trial court noted, any time appellant served as a result of a parole violation prior to the April 28 arrest on the complaint in this case should have been, and was, credited to his remaining parole time associated with his earlier conviction. The parole violation is a separate matter from the criminal prosecution for the theft offense in the instant case. See State v. Long, 11th Dist. No. 98-L-031, 2002-Ohio-4104; State v. Swick, 11th Dist. No. 97-L-254, 2001-Ohio-8831.
 {¶ 31} Based on the foregoing, this court finds that the trial court did not err by granting appellant 18 days jail-time credit for time served until he was transferred to prison on December 18, 2003 and, accordingly, appellant's third assignment of error is not well-taken.
 {¶ 32} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Huron County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Pietrykowski, J., concur.